UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN

| | |
|---|---|
| Christopher Leonard, individually and on behalf of all others similarly situated, | 1:21-cv-10102 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Mondelēz Global LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Mondelēz Global LLC ("Defendant") manufactures, labels, markets, and sells chocolate sandwich cookies containing mint creme identified as "Fudge Covered," under the Oreo brand ("Product").



## I.    DEFINITIONS OF FUDGE

2.    Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

3.    Though fudge can have any flavor, milkfat is the central component.

4.    An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[2]

5.    In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[3]

6.    A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[4]

    4 ounces of chocolate
    2 cups of sugar
    1 teaspoonful of vanilla
    1/2 cup of milk
    1 rounding tablespoonful of butter

7.    Molly Mills, one of today's leading authorities on fudge, recently described it as made "most commonly from butter, milk, sugar, and chocolate."[5]

8.    The Oxford Companion to Sugar and Sweets notes that:

    Traditionally, fudge is made by gently boiling granulated sugar
    and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C);
    adding butter; cooling the mixture somewhat (120°F/49°C);
    then beating until thick, creamy, and less glossy.[6]

---

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.
[2] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[3] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[4] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.
[5] Molly Mills, Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone, Amazon Digital Services LLC, June 11, 2019.
[6] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.

9.      An A-Z of Food and Drink, an authoritative treatise, describes fudge as "a sort of soft, somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[7]

10.     A leading textbook on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and between twelve and twenty percent sweetened condensed milk.

| 10.2    Formulations and Ingredients | | | | 275 |
|---|---|---|---|---|
| Table 10.1   Typical batch formulations (in %) for caramel, fudge and toffee | | | | |
| | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a]Other dairy ingredients might include evaporated milk or dried milk powder
[b]Salted butter needed for toffee

11.     Dictionaries confirm the definitions held by confectionery experts.

12.     Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines fudge as "a soft candy made from sugar, butter, and milk or cream."[8]

13.     The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[9]

14.     Collins Dictionary defines fudge as "a soft brown candy that is made from butter, cream, and sugar."[10]

---

[7] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.
[8] Fudge definition – Google search.
[9] Cambridge Dictionary, fudge.
[10] Collins Dictionary, fudge.

15.    Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate, and sometimes nuts."[11]

16.    Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."[12]

## II.    FAT INGREDIENTS ARE ESSENTIAL TO FUDGE, REGARDLESS OF FORM

17.    The quality of fudge depends on the amount and type of fat-contributing ingredients.[13]

18.    The small droplets of fat are dispersed throughout the fudge mass, providing lubricity, and imparting desirable flavor release.[14]

19.    The fat ingredients are typically from dairy and based on milk fat, mainly added through butter (80% milkfat).

20.    Other dairy ingredients like milk and milk derivatives may be added as well.

21.    Dairy ingredients impart a creamy, rich taste and texture to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

22.    Milk fat melts at mouth temperature (35 °C/95 °F) and does not contribute to a waxy sensation.

23.    Alternatives to milk fat, such as vegetable oils, are often used in place of dairy ingredients to reduce cost.

24.    These vegetable oil ingredients, like palm and palm kernel oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

---

[11] Dictionary.com, fudge.
[12] Macmillan Dictionary, fudge.
[13] International Dairy Federation, Bulletin, 1982.
[14] Hartel R.W., von Elbe J.H., Hofberger R. (2018) Caramel, Fudge and Toffee. In: Confectionery Science and Technology. Springer, Cham. https://doi.org/10.1007/978-3-319-61742-8_10

25.   In contrast to dairy ingredients with milk fat, vegetable oils do not melt at mouth temperature and leave a waxy mouthfeel.

26.   The result of substituting vegetable oils for dairy ingredients is that any resulting "fudge" will provide less satiety, a waxy and oily mouthfeel, and leave an aftertaste.

27.   One popular recipe website echoes the importance of dairy ingredients to fudge, advising, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[15]

28.   Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[16]

29.   One chef recommends to "Never use margarine (vegetable oils) instead of butter [in fudge], because your fudge won't taste as good and will have a shorter shelf life."

30.   Whether a product contains fudge and/or ingredients expected in fudge, is basic front label information consumers rely on when making quick decisions at the grocery store.

31.   The Product lacks essential fudge ingredients – dairy ingredients with milkfat – and substitutes lower quality and lower-priced palm and palm kernel oil and nonfat milk, shown the ingredient list.

---

[15] Use Real Butter For Making Best Fudge, RecipeTips.com.
[16] Easy Fudge Making Tips, The Happy Housewife.

**INGREDIENTS:** SUGAR, PALM AND PALM KERNEL OIL, UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), CANOLA OIL, COCOA (PROCESSED WITH ALKALI), NONFAT MILK, COCOA, HIGH FRUCTOSE CORN SYRUP, LEAVENING (BAKING SODA AND/OR CALCIUM PHOSPHATE), SOY LECITHIN, SALT, PEPPERMINT OIL, CHOCOLATE, YELLOW 5 LAKE, BLUE 1 LAKE, ARTIFICIAL FLAVOR, NATURAL FLAVOR.

**INGREDIENTS:** SUGAR, PALM AND PALM KERNEL OIL, UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), CANOLA OIL, COCOA (PROCESSED WITH ALKALI), NONFAT MILK, COCOA, HIGH FRUCTOSE CORN SYRUP, LEAVENING (BAKING SODA AND/OR CALCIUM PHOSPHATE), SOY LECITHIN, SALT, PEPPERMINT OIL, CHOCOLATE, YELLOW 5 LAKE, BLUE 1 LAKE, ARTIFICIAL FLAVOR, NATURAL FLAVOR.

32.    Since the cookies, fudge and mint are not identified separately, the fudge ingredients are identified by comparing them against the regular Oreo ingredients.

33.    This comparison shows the fudge components are palm and palm kernel oil, nonfat milk, cocoa, and natural flavor, because these ingredients are not a part of the regular Oreo.

34.    Reasonable consumers are misled by the statements, "Fudge Covered Oreo – Mint Creme," and the picture of the cookie being coated with what appears to be fudge, because they expect fudge to mean a food made of dairy ingredients containing milk fat.

6

35.    The Product does not contain such dairy ingredients because it contains nonfat milk and contains palm oils for its fat content.

36.    Fudge covered cookies made with fudge ingredients such as dairy components, containing milkfat, are not a rare or pricy delicacy that would make a reasonable consumer "double check" their presence by scouring the packaging.

37.    Fudge covered cookies made with fudge ingredients such as dairy components, containing milkfat exist in the marketplace and are not technologically or otherwise unfeasible to produce.

38.    The front label creates an erroneous impression that essential fudge ingredients are present.

39.    The fudge representation is in contrast to the truthful and non-misleading "Mint" representations, through words and picture of peppermint leaf, because the Product contains peppermint oil.

40.    The Product contains other representations which are misleading.

41.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

42.    By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that contained fudge ingredients such as dairy ingredients with milkfat.

43.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

44.    Defendant sold more of the Product and at higher prices than it would have in the

absence of this misconduct, resulting in additional profits at the expense of consumers.

45.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

46.    The Product is sold for a price premium compared to other similar products, no less than approximately $3.99 for 9.9 oz (280 g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

47.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

48.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

49.    Plaintiff Christopher Leonard is a citizen of New York.

50.    Defendant Mondelēz Global LLC, is a Delaware limited liability company with a principal place of business in East Hanover, Morris County, New Jersey.

51.    Defendant's managing member is Mondelēz International, Inc., a Virginia corporation with a principal place of business in New Jersey.

52.    Plaintiff and defendant's managing member are citizens of different states.

53.    Defendant transacts business within this District through sale of the Product within this District, through its hundreds of stores within this State, and dozens within this District, and online, sold directly to residents of this District.

54.    Defendant transacts business within this district, through the marketing, supply, and sale of the Product products at thousands of locations, including convenience stores, grocery stores, drug stores, big box stores, warehouse clubs, and online directly to citizens of this district.

55.     Venue is in this District because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

56.     Venue is in the Manhattan Courthouse in this District because a substantial part of the events or omissions giving rise to the claim occurred in New York County, i.e., Plaintiff's purchase of the Product and his awareness of the issues described here.

<u>Parties</u>

57.     Plaintiff Christopher Leonard is a citizen of New York, New York County, New York.

58.     Defendant Mondelēz Global LLC, is a Delaware limited liability company with a principal place of business in East Hanover, New Jersey, Morris County.

59.     The forerunner of Mondelēz was the National Biscuit Company ("Nabisco"), formed in 1898 from a merger of over 100 bakeries.

60.     Nabisco revolutionized packaged snacks through wrapping which maintained freshness and kept out debris.

61.     Nabisco introduced numerous staples of American pantries, including Oreos, Ritz crackers, Wheat Thins, Saltines, and Chips Ahoy.

62.     Nabisco was the second largest advertiser after tobacco companies for much of its history, which created a great reservoir of public trust.

63.     Nabisco, and its successor, Defendant, emphasizes its commitment to quality products, labeled honestly.

64.     These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

65.     Plaintiff purchased the Product on one or more occasions within the statutes of

limitations for each cause of action alleged, at stores including Jack's Stores, at locations such as

223 W 40th St, New York, NY 10018, in 2020 and/or 2021, among other times.

66.    Plaintiff bought the Product because he expected it contained fudge ingredients such

as dairy ingredients with milkfat because that is what the representations said and implied.

67.    Plaintiff relied on the words and images on the Product, on the labeling and/or claims

made by Defendant in digital and/or social media.

68.    Plaintiff bought the Product at or exceeding the above-referenced price.

69.    Plaintiff would not have purchased the Product if he knew the representations and

omissions were false and misleading or would have paid less for it.

70.    Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes and/or lower-priced non-similar products which did not

make the statements and claims made by Defendant.

71.    The Product was worth less than what Plaintiff paid and he would not have paid as

much absent Defendant's false and misleading statements and omissions.

72.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so

with the assurance that Product's representations are consistent with its abilities and/or

composition.

73.    Plaintiff is unable to rely on the labeling of not only this Product, but other similar

products, because he is unsure of whether their representations are truthful.

Class Allegations

74.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following

classes:

> **New York Class:** All persons in the State of New York who
> purchased the Product during the statutes of limitations for

each cause of action alleged.

> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Kansas, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged

75.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

76.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

77.    Plaintiff is an adequate representative because his interests do not conflict with other members.

78.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

79.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

80.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

81.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

82.    Plaintiff incorporates by reference all preceding paragraphs.

83.    Plaintiff and class members desired to purchase a product that contained fudge ingredients such as dairy ingredients with milkfat.

84.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

85.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

86.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

87.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

88.     Plaintiff relied on the representations that the Product contained fudge ingredients such as dairy ingredients with milkfat

89.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

90.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

91.     Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

92.     As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

93.     In addition, defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

94.    The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained fudge ingredients such as dairy ingredients with milkfat.

95.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

96.    This duty is based on Defendant's outsized role in the market for this type of Product, a trusted snack producer, with a higher level of trust with consumers than other brands.

97.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

98.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

99.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

100.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

101.    Defendant had a duty to truthfully represent the Product, which it breached.

102.    This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, a trusted seller of snacks and part of Americana.

103.    The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in defendant, one of the nation's largest snack companies.

104. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

105. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

106. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained fudge ingredients such as dairy ingredients with milkfat.

107. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

108. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

109. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 28, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com