UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE LEONARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>MONDELĒZ GLOBAL LLC,<br><br>    Defendant. | Case No. 1:21-cv-10102-PAC<br><br>The Honorable Paul A. Crotty |

**MEMORANDUM OF LAW IN SUPPORT OF MONDELĒZ GLOBAL LLC'S
MOTION TO DISMISS CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Mondelēz Global LLC

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ALLEGATIONS OF THE COMPLAINT............................................................................ 2

ARGUMENT ....................................................................................................................... 4

    I.    Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is
        Deceptive. ................................................................................................... 4

            A.    The term "fudge," as used on the labeling of Fudge Covered
                 Mint Creme OREO Cookies, refers to the product's flavor—
                 not its ingredients........................................................................ 4

            B.    Plaintiff has not plausibly alleged that consumers associate the
                 term "fudge" with the presence of butter or milk. ................................... 8

    II.    Plaintiff Fails To State A Plausible Breach-of-Warranty Claim. .......................... 11

            A.    Plaintiff's express warranty claim fails for lack of pre-suit
                 notice......................................................................................... 11

            B.    Plaintiff's breach of implied warranty claim fails, as the
                 Product is fit for consumption and Plaintiff is not in privity
                 with MDLZ. .............................................................................. 12

            C.    Plaintiff's MMWA claim fails because "Fudge Covered" does
                 not satisfy the statute's definition of a "written warranty."..................... 13

    III.    Plaintiff Fails To Allege The Fraudulent Intent Needed To Plead A
         Claim For Fraud.................................................................................... 14

    IV.    New York's Economic Loss Rule Bars Plaintiff's Negligent
         Misrepresentation Claim. ....................................................................... 15

    V.    Plaintiff Fails To State A Claim For Unjust Enrichment....................................... 16

CONCLUSION................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986)....................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................4

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018) ....................................................................................11

*Becerra v. Dr. Pepper/Seven-Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..................................................................................................9

*Boswell v. Bimbo Bakeries USA, Inc.*,
No. 20-8923, 2021 WL 5144552 (S.D.N.Y. Nov. 4, 2021)......................................................1

*Bowling v. Johnson & Johnson*,
65 F. Supp. 3d 371 (S.D.N.Y. 2014)........................................................................................13

*Brumfield v. Trader Joe's Co.*,
No. 17-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018).............................................7, 12

*Caronia v. Phillip Morris USA, Inc.*,
715 F.3d 417 (2d Cir. 2013)....................................................................................................12

*Catalano v. BMW of N. Am., LLC*,
167 F. Supp. 3d 540 (S.D.N.Y. 2016)......................................................................................13

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009)......................................................................................15

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...............................................................................11, 12

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ..............................................................................................................16

*Cosgrove v. Blue Diamond Growers*,
No. 19-8993, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ...............................................6, 7, 8

*Cruz v. D.F. Stauffer Biscuit Co.*,
No. 20-2402, 2021 WL 5119395 (S.D.N.Y. Nov. 4, 2021).......................................................8

*Daniel v. Mondelēz Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................................4

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021).................................................................................7

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..............................................................................14

*Ebin v. Kangadis Food Inc.*,
    No. 13-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .............................................16

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) .............................................15

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)...............................................................................................4

*In re Frito-Lay N. Am. Inc. All Natural Litig.*,
    No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................................13, 14

*Greene v. Gerber Prods. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................................14

*Hairston v. S. Beach Beverage Co.*,
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .............................................13

*Harris v. Mondelēz Global LLC*,
    No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 28, 2020)................................................4

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015)...............................................................................16

*Hodges v. King's Hawaiian Bakery West*,
    No. 21-4541, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) .........................................10, 11

*Kennedy v. Mondelēz Global LLC*,
    No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020).................................................11

*Mahoney v. Endo Health Solutions, Inc.*,
    No. 15-9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016)...............................................16

*McBeth v. Porges*,
    171 F. Supp. 3d 216 (S.D.N.Y. 2016)...............................................................................14

*Moore v. Newton*,
    220 F. Supp. 3d 275 (E.D.N.Y. 2016) ................................................................................9

*Paulino v. Conopco, Inc.*,
No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ...............................................11

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013)...................................................................................12

*Quiroz v. Beaverton Foods, Inc.*,
No. 17-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)...............................................14

*Red v. Kraft Foods, Inc.*,
No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)..................................................5

*Reinitz v. Kellogg Sales Co.*,
No. 21-1239, 2022 WL 1813891 (C.D. Ill. June 2, 2022) ...........................................1, 2, 6

*Rodriguez v. It's Just Lunch, Int'l*,
No. 07-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010)...................................................14

*Ruggiero v. Perdue Poultry Co.*,
No. 96-4929, 1997 WL 811530 (S.D.N.Y. Sept. 29, 1997) ................................................12

*In re Sears, Roebuck & Co.*,
No. 05-4742, 2006 WL 1443737 (N.D. Ill. May 17, 2006)..................................................13

*Segedie v. Hain Celestial Grp., Inc.*,
No. 14-5029, 2015 WL 2168374 (S.D.N.Y. 2015)..............................................................15

*Sibrian v. Cento Fine Foods, Inc.*,
No. 19-974, 2020 WL 3618953 (E.D.N.Y. July 2, 2020)....................................................10

*Steele v. Wegmans Food Mkts.*,
472 F. Supp. 3d 47 (S.D.N.Y. 2020).....................................................................................8

*Stiles v. Trader Joe's Co.*,
No. 16-4318, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ...................................................7

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ..............................................15

*Turnipseed v. Simply Orange Juice Co.*,
No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022).....................................................7

*Twohig v. Shop-Rite Supermarkets, Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021).....................................................................................4

*Wallace v. Wise Foods, Inc.*,
No. 20-6831, 2021 WL 3163599 (S.D.N.Y. July 26, 2021)..................................................5

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011) ............................................................................4

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ............................................................................15

**Statutes**

Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et seq. ..................................3, 11, 13

N.Y. G.B.L. § 349 ..................................................................................................3, 4

N.Y. G.B.L. § 350 ..................................................................................................3, 4

N.Y. U.C.C. § 2-607 ..........................................................................................11, 12

## <u>INTRODUCTION</u>

This lawsuit is one of many copycat cases—all filed by the same attorney—challenging the use of the term "fudge" to describe chocolate-flavored foods.[1]  This particular case involves Fudge Covered Mint Creme OREO cookies, which consist of mint-flavored filling sandwiched between two chocolate OREO wafers and covered with chocolate-flavored coating.  Although Plaintiff does not dispute that the coating tastes like chocolate, he claims it is misleading for Mondelēz Global LLC ("MDLZ") to use the term "fudge covered" because the coating lacks "dairy ingredients with milkfat," which Plaintiff describes as "essential fudge ingredients."  Compl. ¶ 31.  Plaintiff's theory of deception is fundamentally flawed, and this Court should dismiss his lawsuit.

Despite Plaintiff's claim to the contrary, no reasonable consumer would construe the term "fudge" as a representation about a product's ingredient composition—let alone as a representation that the cookies' coating contains butter, milk, or other "dairy ingredients with milkfat."  Instead, a reasonable consumer would interpret it to mean that Fudge Covered Mint Creme OREO cookies taste like chocolate (which they do) and are covered in a chocolate-flavored coating (which they are).  Just yesterday, a federal court in Illinois applied this precise reasoning in dismissing a virtually identical "fudge" case filed by Plaintiff's counsel, rejected the plaintiff's allegation that "a chocolate-tasting fudge product made from oils and whey would mislead a reasonable

---

[1] *See, e.g.*, *Pizarro v. Ferrara Candy Co.*, No. 21-151 (S.D.N.Y.) (Keebler Fudge Stripes); *Lederman v. Hershey Co.*, No. 21-4528 (N.D. Ill.) (Hershey Hot Fudge Topping); *Bartosiake v. Bimbo Bakeries USA, Inc.*, No. 21-4495 (N.D. Ill.) (Entenmann's Chocolate Fudge Iced Cake); *Reinitz v. Kellogg Sales Co.*, No. 21-1239 (C.D. Ill.) (Frosted Chocolate Fudge Pop-Tarts); *Huston v. Conagra Brands, Inc.*, No. 21-4147 (C.D. Ill.) (Duncan Hines Chewy Fudge Brownie Mix); *DeMaso v. Walmart Inc.*, No. 21-6334 (N.D. Ill.) (Great Value Fudge Mint Cookies).  These lawsuits represent only a fraction of the many cases Plaintiff's counsel has filed against other food manufacturers.  *See Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-8923, 2021 WL 5144552, at *1 (S.D.N.Y. Nov. 4, 2021) ("This case is the latest in a long string of putative class actions brought by the same lawyer alleging that the packaging on a popular food item is false and misleading.").

consumer," and agreed that the plaintiff had not plausibly alleged "that the average consumer would believe a fudge product must, of necessity, contain milkfat." *Reinitz v. Kellogg Sales Co.*, No. 21-1329, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022).  And many courts across the country have dismissed similar lawsuits premised on the theory that representations about a product's *flavor* misled consumers about the product's *ingredients*.  This Court should similarly reject Plaintiff's implausible allegation that the term "fudge" suggests that Fudge Covered Mint Creme OREO cookies contain butter and milk.

Leaving aside the core flaws in Plaintiff's theory of deception, his ancillary claims for breach of warranty, negligent misrepresentation, common-law fraud, and unjust enrichment all suffer from independent, fatal defects that require their dismissal.  None of Plaintiff's claims are even remotely plausible, and this Court should dismiss his lawsuit with prejudice.

## ALLEGATIONS OF THE COMPLAINT

MDLZ manufactures a wide variety of snack foods under the Nabisco brand, including its iconic OREO cookies.  Although the signature variety of OREO cookies consist of white Creme filling sandwiched between two chocolate wafer cookies, MDLZ also manufactures numerous other varieties of OREO cookies—including the Fudge Covered Mint Creme OREO cookies at issue here.  MDLZ sells those cookies in packaging that features the phrase "Fudge Covered" and depicts two Mint Creme OREO cookies dripping with chocolate coating:



Compl. ¶ 1.

Plaintiff does not dispute that Fudge Covered Mint Creme OREO cookies taste like chocolate and mint.  He nonetheless alleges that the cookies' labeling is misleading because it "creates an erroneous impression that essential fudge ingredients are present." *Id.* ¶ 38.  Relying on century-old recipes for fudge, dictionary definitions, and various other sources, Plaintiff claims that dairy fats—such as butter and whole milk—are the defining ingredients of fudge. *See id.* ¶¶ 2–16.  Plaintiff accordingly alleges that the fudge coating of Fudge Covered Mint Creme OREO cookies is not "fudge," and that the cookies are mislabeled, because the coating "contains nonfat milk" in lieu of dairy fats "and contains palm oils for its fat content." *Id.* ¶ 35.

Based on these allegations, Plaintiff asserts claims for: (1) violations of sections 349 and 350 of the New York General Business Law; (2) "violations of state consumer fraud acts"; (3) "breaches of express warranty, implied warranty of merchantability and Magnuson Moss Warranty Act"; (4) negligent misrepresentation; (5) common-law fraud; and (6) unjust enrichment. *See* Compl. ¶¶ 82–109 (capitalization omitted).  Plaintiff asserts these claims on behalf of a putative class of New York consumers and a "Consumer Fraud Multi-State Class," which consists of individuals who purchased Fudge Covered Mint Creme OREO cookies in Kansas, North Dakota, and Wyoming. *See id.* ¶ 74.  He seeks several remedies on behalf of the putative class, including damages and restitution.[2] *See id.* at 14–15 (Jury Demand and Prayer for Relief).

---

[2] Although Plaintiff's complaint purports to seek "class-wide injunctive relief" (Compl. ¶ 81), he withdrew that request in his response to MDLZ's request for a pre-motion conference. *See* ECF No. 12, at 3 n.1 ("Plaintiff respectively withdraws his claim for injunctive relief.").

## ARGUMENT

I.     **Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Deceptive.**

To state a claim under sections 349 and 350 of the New York General Business Law, Plaintiff must plausibly allege that the labeling of Fudge Covered Mint Creme OREO cookies is "likely to mislead a reasonable consumer acting reasonably under the circumstances."[3] *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Importantly, the "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011); *see also Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) ("[P]laintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.") (citation and internal quotation marks omitted). And as the Supreme Court has made clear, this Court must apply "common sense" in determining whether Plaintiff has stated a plausible claim of deception. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) ("A reasonable consumer does not lack common sense."). Viewed though that lens, Plaintiff has not come close to stating a plausible consumer fraud claim.

> A.     **The term "fudge," as used on the labeling of Fudge Covered Mint Creme OREO Cookies, refers to the product's flavor—not its ingredients.**

Plaintiff's lawsuit is premised on the theory that the term "fudge," as used on the labeling of Fudge Covered Mint Creme OREO cookies, falsely implies the presence of butter and milk,

---

[3] Like N.Y. G.B.L. §§ 349 and 350 (and virtually all consumer fraud statutes) the Delaware, Kansas, and Wyoming statutes Plaintiff invokes in her complaint employ a similar "reasonable consumer" standard. *See Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) ("Although Plaintiffs allege violations of consumer protection statutes from forty states and the District of Columbia, the parties agree that the critical issue for resolving this motion is whether a reasonable consumer would be misled . . . .").

which Plaintiff describes as "essential fudge ingredients."[4]  Compl. ¶ 31.  Notably, Plaintiff does

not dispute that Fudge Covered Mint Creme OREO cookies taste like chocolate.  Nor does he point

to any representations—like "made with real butter"—that would imply the presence of these

allegedly "essential" ingredients.  Instead, he alleges that because the cookies use palm oils as a

fat source in lieu of butter and milk, it is misleading to use the term "fudge" on the labeling.

This theory fails, however, because MDLZ does not represent—either expressly or

implicitly—that its Fudge Covered Mint Creme OREO cookies are made with butter, milk, or any

other ingredient.  Courts around the country have repeatedly dismissed consumer fraud claims

where the plaintiff "alleges that a consumer will read a true statement on a package and will then . . .

assume things about the products *other than* what the statement actually says." *Red v. Kraft Foods,

Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012); *see also, e.g.*, *Wallace v.

Wise Foods, Inc.*, No. 20-6831, 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) (dismissing

lawsuit filed by Plaintiff's counsel challenging representation of potato chips as "Cheddar & Sour

Cream Flavored" and noting that "[n]othing in the label states or implies that the chips' flavor is

derived entirely from sour cream" or that "the chips are flavored only with natural ingredients").

That commonsense principle is fatal to Plaintiff's lawsuit.

Here, MDLZ's labeling does not state, or even imply, that its Fudge Covered Mint Creme

OREO cookies contain butter, milk, or any other specific ingredient.  Rather, it accurately suggests

that the cookies taste like chocolate, are coated in chocolate, and look like the cookies depicted on

---

[4] Notably, Plaintiff does not challenge the accuracy of the label's "truthful and non-misleading 'Mint' representations."  Compl. ¶ 39.  Nor does Plaintiff allege that the "mint" representations have any bearing on the truth or falsity of the "fudge" representations or the effect of that representation on reasonable consumers.  All the "mint" representations convey is that the cookies have a minty taste, which Plaintiff does not—and cannot—dispute.

the front label.  Indeed, another court recently applied that precise reasoning in dismissing *Reinitz v. Kellogg Sales Co.*, a virtually identical "fudge" case filed by Plaintiff's counsel.

In *Reinitz*, the plaintiff alleged that the labeling of Frosted Chocolate Fudge Pop-Tarts was misleading because the product contained whey and vegetable fats in lieu of butter and milk, "ingredients which she claim[ed] are essential to fudge."  2022 WL 1813891, at *1.  The court dismissed this claim.  In so holding, the court agreed that the plaintiff had not plausibly alleged "that the average consumer would believe that a fudge product must, of necessity, contain milkfat" or that "a chocolate-tasting fudge product made from oils and whey would mislead a reasonable consumer."  *Id.* at *3–4   Absent a plausible allegation that "a reasonable consumer would expect fudge to contain milkfat," the court concluded, the plaintiff "fail[ed] to establish that a consumer who purchased non-milkfat-containing Fudge Pop-Tarts would be deceived."  *Id.* at *4.

Here too, there is no dispute that the chocolate coating of Fudge Covered Mint Creme OREO cookies tastes like chocolate, and no reasonable consumer would interpret the word "Fudge" to mean that the coating included dairy fats as opposed to vegetable fats.  Consistent with that reasoning, courts around the country have dismissed similar lawsuits—including many brought by Plaintiff's counsel here—premised on the allegation that a representation about the product's *flavor* amounted to a representation about its *ingredients*.

For example, in *Cosgrove v. Blue Diamond Growers*, the plaintiffs—represented by Plaintiff's counsel here—alleged that the defendant's vanilla almond milk was mislabeled because "it has less vanilla than the label represents."  No. 19-8993, 2020 WL 7211218, at *1 (S.D.N.Y. Dec. 7, 2020).  But the court found the labeling was "not misleading because a reasonable consumer would associate the representation of 'Vanilla'—with no additional language modifiers—to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient."  *Id.* at

*3.  In so holding, the court emphasized that the "large font 'Vanilla' on the front of the Product allows the consumer to quickly understand the flavor of the almond milk and differentiate between products." *Id.*  Absent any "additional representations about how that flavor is achieved," the court concluded, "use of the 'Vanilla' representation on the Product is not misleading." *Id.*[5]

Similarly, in *Stiles v. Trader Joe's Co.*, the court dismissed a lawsuit alleging that the product names "Frosted Maple and Brown Sugar Shredded Bite Size Wheats" and "Oatmeal Complete Maple and Brown Sugar" falsely suggested that the products contained maple syrup or maple sugar.  No. 16-4318, 2017 WL 3084267, at *1 (C.D. Cal. Apr. 4, 2017).  In so holding, the court found that the label was not deceptive because the products tasted like maple and "neither of the Products' names advertises 'maple syrup' or 'maple sugar.'" *Id.* at *4.  Likewise, in *Brumfield v. Trader Joe's Co.*, the court dismissed a lawsuit alleging that Trader Joe's "Black Truffle Flavored Extra Virgin Olive Oil" falsely suggested that the product "contained real truffles."  No. 17-3239, 2018 WL 4168956, at *1–2 (S.D.N.Y. Aug. 30, 2018).  As the court explained, "[a]ll that label would suggest to a 'reasonable consumer acting reasonably' is that the product is designed to taste like black truffles, which, according to the Complaint, it does." *Id.* at *2.

That reasoning is fatal to Plaintiff's lawsuit.  MDLZ does not represent that Fudge Covered Mint Creme OREO cookies include butter, milk, or any specific ingredient.  All the word "Fudge"

---

[5] Countless courts around the country have reached the same conclusion in similar "vanilla" cases filed by Plaintiff's counsel.  *See generally Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *3 (S.D.N.Y. Mar. 4, 2022) ("*Numerous* other courts, including this Court, have already dismissed near-identical challenges to the use of the word 'vanilla' on food labels because there is nothing in the word 'vanilla' itself that would lead a reasonable consumer to understand a product's flavor to be derived mostly or exclusively from the vanilla bean.") (emphasis in original).  These courts have agreed that terms like "vanilla," standing alone, are "representation[s] about the *flavor* of the product" rather than "the *source* of the product's vanilla flavor."  *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 243 (S.D.N.Y. 2021).

conveys is that the coating tastes like chocolate, which Plaintiff does not dispute.[6]  *See Cruz v. D.F. Stauffer Biscuit Co.*, No. 20-2402, 2021 WL 5119395, at *6 (S.D.N.Y. Nov. 4, 2021) ("Plaintiffs do not allege that the Product does not taste like lemons, and therefore a consumer reasonably expecting a lemon-flavored cookie as a result of the packaging is not misled.").

Indeed, just as the term "vanilla" would help a consumer differentiate a pint of vanilla ice cream from a pint of butter pecan or strawberry ice cream, the phrase "Fudge Covered" helps consumers differentiate Fudge Covered Mint Creme OREO cookies from OREO cookies— including both the signature black and white OREO sandwich cookies and other varieties, such as Chocolate Marshmallow, Birthday Cake, Java Chip, and un-coated Mint Creme OREO cookies. *See Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select[] from many choices (chocolate, lemon, mint, lime, etc.) the one he wants.  Thus the large-type 'Vanilla' is of immediate use.").  Because "Fudge Covered" accurately describes the flavor of the chocolate coating and does not imply the presence of specific ingredients, Plaintiff has not stated a plausible claim.

### B.    Plaintiff has not plausibly alleged that consumers associate the term "fudge" with the presence of butter or milk.

Even assuming for argument's sake that a reasonable consumer might associate the term "fudge" with the presence of certain ingredients as opposed to the product's flavor (which is false), Plaintiff's lawsuit fails because he has not plausibly alleged that consumers would associate the

---

[6] Plaintiff alleges in passing that, in contrast to the "creamy" and "rich" taste associated with butter and milk, fudge made with vegetable fat has a "waxy and oily mouthfeel" and an "aftertaste." Compl. ¶¶ 21, 26.  But Plaintiff's subjective view that OREO cookies lack a "real" fudge taste does not establish that the term "fudge" is *objectively* false or misleading, as is necessary to prevail on his consumer fraud claims.  *See Cosgrove,* 2020 WL 7211218, at *4 (rejecting allegation that the defendant's vanilla almond milk did not have an "authentic" vanilla taste and noting that the plaintiffs had "present[ed] no allegations that would show their argument regarding the taste of 'authentic' vanilla is anything but a subjective one, not shared by the reasonable consumer").

term "fudge" with the presence of butter and milk—the two allegedly "essential" ingredients absent from the coating of Fudge Covered Mint Creme OREO cookies.  *See* Compl. ¶ 31.

Although Plaintiff cites a number of sources—including a Wikipedia article, several recipes from the turn of the 20th century, and a handful of inapposite dictionary definitions[7]—to support his allegation that "fudge" must contain butter and milk (*see* Compl. ¶¶ 2–16), he concedes that "[a]lternatives to milk fat, such as vegetable oils in the form of vegetable shortening, are often used in place of dairy ingredients . . . ."  *Id.* ¶ 23.  Similarly, Plaintiff relies on a definition from Molly Mills, who is purportedly "one of today's leading authorities on fudge."  *Id.* ¶ 7.  But Ms. Mills's definition states that fudge is "made '*most commonly* from butter, milk, sugar, and chocolate'"—not that these ingredients are *always* present in fudge.[8]  *Id.* (emphasis added).  In other words, Plaintiff's own complaint establishes that there is no uniform, canonical definition of "fudge"—which means that he has not plausibly alleged that consumers would expect that "fudge" would necessarily contain butter or milk.

---

[7] The dictionary definitions Plaintiff cites universally refer to "fudge" as a type of food, rather than a flavor.  *See* Compl. ¶¶ 12–16 (defining "fudge" as a "soft candy," a "soft sweet," a "soft brown candy," and a "soft brown sweet food").  But those definitions are inapplicable, as the labeling makes clear that the product is not a block of fudge but instead a chocolate-coated cookie.  *See generally Becerra v. Dr. Pepper/Seven-Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (affirming dismissal of lawsuit alleging that the term "diet" implied that diet soda would assist in weight loss and noting that the plaintiff's "selective quotations" from the dictionary "omit the definitions of 'diet' as an adjective and the frequent use of 'diet soft drinks' as the primary example of the word's usage in that context").

[8] Tellingly, Ms. Mills's book—which Plaintiff cites in his complaint and thereby has incorporated by reference—includes numerous recipes that omit butter, milk, and/or chocolate and include non-traditional ingredients such as dried cranberries, white chocolate chips, and maple syrup.  *See* Smith Decl. Ex. 1 (compilation of recipes from Molly Mills, *Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone* (2019)); *see also Moore v. Newton*, 220 F. Supp. 3d 275, 280 n.5 (E.D.N.Y. 2016) ("Documents are deemed incorporated by reference when the complaint refers to them.").  Far from supporting Plaintiff's specious interpretation of "fudge," Ms. Mills's book confirms that reasonable consumers do not associate "fudge" with any particular ingredients.

Indeed, many courts have dismissed similar consumer fraud lawsuits alleging that consumers would expect products to contain highly specific ingredients.  For example, in *Sibrian v. Cento Fine Foods, Inc.*, the plaintiff—represented by Plaintiff's counsel here—alleged that it was misleading to label canned tomatoes as "Certified San Marzano" because they were not certified by the Consortium of the San Marzano Tomato.  No. 19-974, 2020 WL 3618953, at *1–2 (E.D.N.Y. July 2, 2020).  The court dismissed this claim.  "[W]hile there may be 'some few consumers' who expect that a San Marzano tomato must be certified by the Consortium," the court explained, "the vast majority of reasonable consumers expect no such thing." *Id.* at *4.  Instead, the court concluded, "[i]t is much more likely that consumers expect tomatoes grown in a region of Italy." *Id.*  Because the plaintiff did not allege that the tomatoes were not grown in that region, and the defendant did not represent that the product was certified by the Consortium, the court found that the labeling was not misleading. *Id.*

Similarly, in *Hodges v. King's Hawaiian Bakery West, Inc.*, the plaintiffs—once again represented by Plaintiff's counsel here—alleged that they interpreted the phrase "Original Hawaiian Sweet Rolls" to imply the presence of "traditional ingredients" from Hawaii, including pineapple juice, honey, and sugar.  No. 21-4541, 2021 WL 5178826, at *1 (N.D. Cal. Nov. 8, 2021).  The court dismissed this lawsuit.  In so holding, it noted that the defendant "never claimed the traditional production methods and ingredients that plaintiffs unreasonably attribute to the company's sweet rolls," and it concluded that it was "inappropriate and unreasonable to infer that defendant's sweet rolls include such allegedly traditional ingredients based solely on selective review of the Product's packaging." *Id.* at *6.

Here too, the labeling of Fudge Covered Mint Creme OREO cookies does not reference butter or milk; instead, as in *Hodges*, "[a]ll references" to these ingredients come from Plaintiff's

complaint.  2021 WL 5178826, at *6.  Because the labeling does not specifically represent that the product contains butter or milk, and because no reasonable consumer would interpret the term "fudge" to refer to these specific ingredients, Plaintiff has not stated a plausible claim of deception.

## II.   Plaintiff Fails To State A Plausible Breach-of-Warranty Claim.

When a plaintiff asserts a breach-of-warranty claim premised on allegedly false advertising, that claim necessarily fails if the plaintiff cannot establish that the defendant's advertising was likely to deceive a reasonable consumer.[9]  Here, absent any plausible allegation that the cookies' labeling would mislead a reasonable consumer, Plaintiff cannot state a plausible breach-of-warranty claim against MDLZ.  But even if the Court concluded that Plaintiff's theory of deception is viable (which it is not), his claims for breach of express warranty, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act ("MMWA") all suffer from independent, fatal defects that require their dismissal.

### A.   Plaintiff's express warranty claim fails for lack of pre-suit notice.

"To successfully state a claim for breach of warranty" under New York law, "a buyer must provide the seller with timely notice of an alleged breach of warranty."  *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citations omitted); *see generally* N.Y. U.C.C. § 2-607(3)(a).  Failure to do so bars a plaintiff from bringing a claim for breach of express warranty.  *See Paulino v. Conopco, Inc.*, No. 14-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a 'buyer must within a reasonable time after he

---

[9] *See, e.g.*, *Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020) (finding that the "reasonable consumer" standard for purposes of a breach of express warranty claim "is the same as that analyzed under New York's consumer protection law"); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) (similar).

discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'") (quoting N.Y. U.C.C. § 2-607(3)(a)).

Here, Plaintiff alleges that he "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees." Compl. ¶ 97.  But New York law requires Plaintiff to allege that he provided pre-suit notice—not simply that he may or may not have done so.  *See, e.g.*, *Colella*, 348 F. Supp. 3d at 143–44 (dismissing breach of express warranty claim for lack of pre-suit notice); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same). Plaintiff's failure to allege pre-suit notice defeats his breach of express warranty claim.

**B.    Plaintiff's breach of implied warranty claim fails, as the Product is fit for consumption and Plaintiff is not in privity with MDLZ.**

Under New York law, the implied warranty of merchantability "requires only that the goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for which such goods are used." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433-34 (2d Cir. 2013) (applying New York law) (citations and internal quotation marks omitted).  In cases involving food products, this requires the plaintiff to allege that the product was "unfit to be consumed." *Brumfield*, 2018 WL 4168956, at *4; *see also Ruggiero v. Perdue Poultry Co.*, No. 96-4929, 1997 WL 811530, at *1 (S.D.N.Y. Sept. 29, 1997) ("The product must have been actually unfit for human consumption or defective at the time it left the possession or control of the manufacturer.").  Here, Plaintiff does not allege that Fudge Covered Mint Creme OREO cookies are unfit for consumption; instead, he alleges that they are mislabeled because their coating does not contain "essential fudge ingredients." Compl. ¶ 31.  That is woefully insufficient to establish a breach of the implied warranty of merchantability.

Plaintiff's implied warranty claim also fails for lack of privity, as he allegedly purchased the Product from Jack's Stores and other "stores." *See* Compl. ¶ 65.  That is fatal to this claim, as

New York law "require[s] privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *accord Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) ("To have a cause of action for breach of an implied warranty of fitness . . . privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller.").

### C.     Plaintiff's MMWA claim fails because "Fudge Covered" does not satisfy the statute's definition of a "written warranty."

The MMWA "defines a 'warranty' as a 'written affirmation' that a consumer product will be 'defect free or will meet a specified level of performance over a specified period of time.'" *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377–78 (S.D.N.Y. 2014) (quoting 15 U.S.C. § 2301(6)) (emphasis omitted). Here, even assuming that the statement "Fudge Covered" constituted a "written affirmation," none of those representations constitute an actionable warranty under the MMWA because they do not represent that Fudge Covered Mint Creme OREO cookies are "defect free" or that they will "meet a specified level of performance over a specified period of time." At most, the phrase "Fudge Covered" is a "product description," which is not actionable under the MMWA. *Id.* at 378 (quoting *In re Frito-Lay N. Am. Inc. All Natural Litig.*, No. 12-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013)). [10]

---

[10] *See also, e.g.*, *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) ("The challenged statements—'all natural with vitamins' and the names of various Lifewater flavors—are 'product descriptions' rather than promises that Lifewater is defect-free, or guarantees of specific performance levels."); *In re Sears, Roebuck & Co.*, No. 05-4742, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (holding that the phrase "Made in the USA" is a "product description that does not inform consumers that the tools are defect-free or make any representation about performance at a specified level over a specified time").

**III.**     **Plaintiff Fails To Allege The Fraudulent Intent Needed To Plead A Claim For Fraud.**

To state a claim for fraud, "a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (citation omitted).  A plaintiff must *also* "plead scienter, or fraudulent intent." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017).

Plaintiff alleges that "the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations." Compl. ¶ 107; *see also id.* ¶ 108 ("Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.").  But even if these boilerplate allegations were sufficient to establish that MDLZ knew its labeling was false (which they are not), "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018).  Similarly, while Plaintiff alleges that MDLZ's "fudge" representations allowed it to sell "more of the Product and at higher prices than it would have in the absence of this misconduct" (Compl. ¶ 44), courts have agreed that "a defendant's 'generalized motive to satisfy consumers' desires [or] increase sales and profits'" is also "not sufficient to establish fraudulent intent." *Davis*, 297 F. Supp. 3d at 337 (quoting *In re Frito-Lay*, 2013 WL 4647512, at *25).[11] Here too, absent any factual allegations suggesting MDLZ acted with fraudulent intent by using

---

[11] *See also, e.g.*, *Quiroz v. Beaverton Foods, Inc.*, No. 17-7348, 2019 WL 1473088 at *10-11 (E.D.N.Y. Mar. 31, 2019) (holding allegation that the defendant had "a motive to misrepresent whether the Product contained preservatives in order to gain a marketing advantage" did not establish scienter) (internal quotation marks omitted); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *6 (S.D.N.Y. Feb. 23, 2010) ("[A] desire to increase company profits cannot, standing alone, be a sufficient basis on which to predicate a fraud claim, lest every company be vulnerable to allegations of fraud.").

the term "Fudge Covered" to describe the chocolate coating of Fudge Covered Mint Creme OREO cookies, Plaintiff has not stated a plausible claim for common-law fraud.

## IV.   New York's Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim.

Under New York's economic loss doctrine, a plaintiff who has "suffered economic loss, but not personal or property injury," may not recover in tort if he has non-tort remedies available. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation omitted); *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (same).  Here, Plaintiff cannot seek a tort remedy for negligent misrepresentation because he has other non-tort causes of action available to him.

While a plaintiff can sidestep the economic loss doctrine by alleging a "special relationship" with the defendant, such a special relationship does not arise in the context of an ordinary, arms-length sale of consumer products. *See, e.g.*, *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *23–26 (E.D.N.Y. Sept. 22, 2015) (dismissing claim for negligent misrepresentation based on sale of allegedly mislabeled Greek Yogurt); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-5029, 2015 WL 2168374, at *14 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim based on allegedly mislabeled "natural" and "organic" products and noting that "Defendant's obligation to label products truthfully does not arise from any special relationship").  Plaintiff alleges no damages beyond pure economic loss and pleads no facts suggesting that his purchase of Fudge Covered Mint Creme OREO cookies was anything but a routine commercial transaction.  This claim is accordingly not cognizable under New York law.

## V.      Plaintiff Fails To State A Claim For Unjust Enrichment.

Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Rather, such a claim is viable only in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id.*  In other words, *Corsello* bars plaintiffs from "bring[ing] an unjust enrichment claim as a catch-all cause of action." *Mahoney v. Endo Health Solutions, Inc.*, No. 15-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).  For that reason, courts in New York regularly dismiss unjust enrichment claims as duplicative when they are based on the same factual allegations as other tort claims.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim where "plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015) (same).

Here, Plaintiff's unjust enrichment claim simply alleges that MDLZ "obtained benefits and monies because the Product was not as represented and expected."  Compl. ¶ 109.  That claim is entirely duplicative of Plaintiff's remaining claims, and it accordingly fails as a matter of law.

## CONCLUSION

MDLZ respectfully requests that the Court dismiss Plaintiff's lawsuit with prejudice.

Dated:  June 3, 2022

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Dean N. Panos
Dean N. Panos (*pro hac vice*)
Alexander M. Smith (*pro hac vice*).

Attorneys for Defendant
Mondelēz Global LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on June 3, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  June 3, 2022                                    By:  _____ /s/ Dean N. Panos_____
                                                                              Dean N. Panos