# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE LEONARD, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-10102-PAC |
| Plaintiff, | |
| vs. | The Honorable Paul A. Crotty |
| MONDELĒZ GLOBAL LLC, | |
| Defendant. | |

## REPLY IN SUPPORT OF MONDELĒZ GLOBAL LLC'S
## MOTION TO DISMISS CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Mondelēz Global LLC

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.    Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Deceptive. ...................... 1

    A.    MDLZ's use of the term "fudge" is not misleading. ................................................. 2

    B.    The meaning of "fudge" does not present a disputed question of fact. ................... 6

II.    Plaintiff's Common-Law Claims Also Fail. ..................................................................... 8

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aracena v. BMW of N. Am., LLC*,
  71 N.Y.S.3d 614 (App. Div. 2018) ..........................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................10

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ...................................................................................4

*Beers v. Mars Wrigley Confectionery US, LLC*,
  No. 21-2, 2022 WL 493555 (S.D.N.Y. Feb. 17, 2022)..............................................6

*Brown v. Kellogg Sales Co.*,
  No. 20-7283, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022)........................................8

*Brown v. Kerry Inc.*,
  No. 20-9370, 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)......................................9

*Campbell v. Whole Foods Market Group, Inc.*,
  516 F. Supp. 3d 370 (S.D.N.Y. 2021).......................................................................4

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016).......................................................................9

*Chen v. Dunkin Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020).......................................................................................6

*Chiappetta v. Kellogg Sales Co.*,
  No. 21-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ..........................................2

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) .......................................................................9

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ..............................................................................................10

*Cosgrove v. Blue Diamond Growers*,
  No. 19-8993, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) .......................................7

*Cruz v. D.F. Stauffer Biscuit Co.*,
  No. 20-2402, 2021 WL 5119395 (S.D.N.Y. Nov. 4, 2021)....................................3, 4

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021)................................................................4, 8

*Duran v. Henkel of America, Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020).....................................................................6

*Ebin v. Kangadis Food Inc.*,
    No. 13-2311, 2013 WL 6504547 (Dec. 11, 2013)..................................................9

*Fink v. Time Warner Cable, Inc.*,
    714 F.3d 739 (2d Cir. 2013)...............................................................................2, 6

*Geffner v. Coca-Cola Co.*,
    928 F.3d 198 (2d Cir. 2019).....................................................................................6

*Harris v. Mondelēz Global LLC*,
    No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 28, 2020)................................2, 6

*Hodges v. King's Hawaiian Bakery W., Inc.*,
    No. 21-4541, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ....................................5

*Mitchell v. Whole Foods Mkt. Grp., Inc.*,
    No. 20-8496, 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022)........................................4

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................10

*Newton v. Kraft Heinz Foods Co.*,
    No. 16-4578, 2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018)..................................7

*Randy Knitwear, Inc. v. American Cyanamid Co.*,
    11 N.Y.2d 5 (1962) ..................................................................................................9

*Reinitz v. Kellogg Sales Co.*,
    No. 21-1329, 2022 WL 1813891 (C.D. Ill. June 2, 2022) ............................1, 2, 3, 5

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006).....................................................................................2

*Sarr v. BEF Foods, Inc.*,
    No. 18-6409, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) .....................................6

*Sibrian v. Cento Fine Foods, Inc.*,
    No. 19-974, 2020 WL 3618953 (E.D.N.Y. July 2, 2020).........................................5

*Stiles v. Trader Joe's Co.*,
    No. 16-4318, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) .....................................8

*Thomas v. Costco Wholesale Corp.*,
   No. 21-55355, 2022 WL 636637 (9th Cir. Mar. 4, 2022).........................................................6

*Turnipseed v. Simply Orange Juice Co.*,
   No. 20-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022).........................................................7

## INTRODUCTION

In his opposition brief, Plaintiff doubles down on his implausible theory that the term "fudge," as used to describe the coating of Fudge Covered Mint Creme OREO cookies, misleads consumers into believing that the coating contains butter and milk.  It does no such thing.  All the term "fudge" conveys is that the coating tastes like chocolate fudge—a fact Plaintiff does not and cannot dispute.  Last month, another federal court dismissed a virtually identical "fudge" case filed by Plaintiff's counsel for this exact reason, holding that no reasonable consumer "would believe a fudge product must, of necessity, contain milkfat."  *Reinitz v. Kellogg Sales Co.*, No. 21-1329, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022).  This Court should reach the same result here.

Plaintiff asserts that the meaning of the term "fudge" presents a factual dispute that this Court cannot resolve at the motion to dismiss stage.  But courts have routinely dismissed cases—including many filed by Plaintiff's counsel here—premised on the theory that a representation about a product's *flavor* led consumers to believe that the product contained certain *ingredients*. And many courts have similarly dismissed cases in which consumers sought to hold manufacturers liable based on unreasonable expectations about a product's ingredients.  Here too, Plaintiff's subjective and unreasonable belief that the word "fudge" implies the presence of butter and milk does not render MDLZ liable for false advertising.  This Court should dismiss Plaintiff's implausible consumer fraud claims and his equally untenable common-law claims with prejudice.

## ARGUMENT

### I.     Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Deceptive.

Plaintiff does not dispute that his consumer fraud claims, including both his claims under sections 349 and 350 of the New York General Business Law and the Delaware, Kansas, and Wyoming statutes Plaintiff cites in his complaint, require him to establish that MDLZ's labeling

is "likely to mislead a reasonable consumer acting reasonably under the circumstances."[1] *Fink v. Time Warner Cable, Inc.*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) ("Although Plaintiffs allege violations of consumer protection statutes from forty states and the District of Columbia, the parties agree that the critical issue for resolving this motion is whether a reasonable consumer would be misled . . . ."). Plaintiff's core allegation—that the term "fudge" suggests the presence of butter and milk—does not come close to satisfying this "reasonable consumer" standard.

### A.    MDLZ's use of the term "fudge" is not misleading.

Plaintiff does not dispute that the coating of Fudge Covered Mint Creme OREO cookies tastes like chocolate fudge. Nor does Plaintiff point to any representations on the packaging that the cookies contain butter, milk, or any other specific ingredient. Plaintiff nonetheless insists that MDLZ's use of the term "fudge" is misleading because "milkfat is the central component of fudge." Opp'n at 4 (citing Compl. ¶¶ 3–16) (internal quotation marks omitted). But Plaintiff does not identify a single case that has endorsed this far-fetched theory of deception, and another federal court has rejected Plaintiff's implausible allegation that "the average consumer would believe a fudge product must, of necessity, contain milkfat." *Reinitz*, 2022 WL 1813891, at *3.

---

[1] Plaintiff asserts that MDLZ waived its arguments against his claims on behalf of the "multi-state class" by raising them in a footnote. *See* Opp'n at 7. But Plaintiff does not—and cannot—dispute that the Delaware, Kansas, and Wyoming consumer fraud statutes he invokes in his complaint employ a "reasonable consumer" standard that is identical to the standard New York law employs. And even if MDLZ raised this point in a footnote, it is well-established that courts have "ample discretion" to consider arguments in footnotes—particularly "where, as here, there can be no question of surprise as to the nature of the contention, and refusing to consider the issue would result in substantial injustice." *Salahuddin v. Goord*, 467 F.3d 263, 276 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Chiappetta v. Kellogg Sales Co.*, No. 21-3545, 2022 WL 602505, at *7 n.6 (N.D. Ill. Mar. 1, 2022) (granting motion to dismiss consumer fraud claim brought by Plaintiff's counsel and holding that the court "need not disregard Kellogg's argument merely because it was made in a footnote").

Plaintiff asserts that this Court is not bound by *Reinitz* and that "the facts of each case are distinct." Opp'n at 6. But Plaintiff does not—and cannot—articulate any distinction between the allegations the court rejected in *Reinitz* and his allegations in this lawsuit. Both cases are premised on the theory that the term "fudge," as used to describe a chocolate-flavored product, is misleading because it suggests that the product contains butter and milk. As the *Reinitz* court made clear, however, that theory is implausible because the term "fudge" refers only to the product's chocolate taste, as opposed the presence of butter and milk. *See Reinitz*, 2022 WL 1813891, at *3–4.

Here too, there is no dispute that Fudge Covered Mint Creme OREO cookies are covered in chocolate-flavored coating and that the coating tastes like chocolate. It is accordingly not misleading for MDLZ to describe them as "fudge covered." *See, e.g.*, *Cruz v. D.F. Stauffer Biscuit Co.*, No. 20-2402, 2021 WL 5119395, at *6 (S.D.N.Y. Nov. 4, 2021) ("Plaintiffs do not allege that the Product does not taste like lemons, and therefore a consumer reasonably expecting a lemon-flavored cookie as a result of the packaging is not misled."). And while Plaintiff claims that MDLZ could have used the phrase "chocolate-flavored coating" in lieu of "fudge covered" (Opp'n at 5–6), that does not establish that the term "fudge" implies the presence of butter, milk, or any other "fudge ingredients"—as Plaintiff must plausibly allege to state a viable consumer fraud claim.

Plaintiff attempts to sidestep this result by asserting that his interpretation of the labeling is consistent with "numerous general purpose and academic definitions" of the term "fudge." Opp'n at 4–5. But Plaintiff's reliance on these definitions is misplaced because they refer to "fudge" as a stand-alone food (*e.g.*, a block of fudge), as opposed to the chocolate flavor of the

cookies.[2]  Here too, even if "fudge" arguably conveyed the presence of butter and milk when used

as a noun, it does not do so when used as an adjective to describe a product's chocolate fudge

flavor, such as in the phrase "Fudge Covered Mint Creme OREO" cookies.[3]

Even more importantly, the dictionary definitions Plaintiff cites do not support his

categorical view that fudge *must* include butter or milk.  For example, Molly Mills, who Plaintiff

describes as "one of today's leading authorities on fudge," states that fudge is "made '*most*

*commonly* from butter, milk, sugar, and chocolate'"—not that these ingredients are *always* present

in fudge.  Compl. ¶ 7 (emphasis added).  Indeed, Ms. Mills's book on fudge—which Plaintiff cites

in his complaint—includes numerous recipes for fudge that omit butter, milk, and/or chocolate,

proving that these ingredients are not in fact "essential" for fudge.  *See* Smith Decl. Ex. A

(compilation of recipes from Ms. Mills's book).  And leaving aside his selective citation of Ms.

Mills's book, Plaintiff admits that "[a]lternatives to milk fat, such as vegetable oils, are often used

---

[2] *See, e.g., Mitchell v. Whole Foods Mkt. Grp., Inc.*, No. 20-8496, 2022 WL 657044, at *5 (S.D.N.Y. Mar. 4, 2022) (dismissing lawsuit challenging labeling of chocolate-flavored ice cream bars whose coating contained vegetable fats because "chocolate can be used as both a noun and an adjective" and "can be commonly understood to denote a flavor"); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (affirming dismissal of lawsuit alleging that the term "diet" falsely implied that diet soda would assist in weight loss and noting that the plaintiff's "selective quotations" from the dictionary "omit the definitions of 'diet' as an adjective and the frequent use of 'diet soft drinks' as the primary example of the word's usage in that context").

[3] Plaintiff relies on *Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021) to argue that consumers would understand the term "fudge" in a manner consistent with the dictionary definitions he cites.  *See* Opp'n at 2–3.  But in *Campbell*, the court specifically found that the phrase "graham cracker" was a representations about the product's ingredients because the term "graham" is not "associated with a particular flavor."  516 F. Supp. 3d at 383.  Other courts have declined to extend *Campbell*'s reasoning to cases—like this one—where the challenged labeling claim is associated with a particular flavor as opposed to specific ingredients.  *See, e.g., Cruz*, 2021 WL 5119395, at *6 (distinguishing *Campbell* and holding that the term "lemon" referred to the product's flavor as opposed to its ingredients); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 245 (S.D.N.Y. 2021) (distinguishing *Campbell* and holding that the term "vanilla" referred to the product's flavor as opposed to its ingredients); *see also infra* § I.B.

in place of dairy ingredients" in fudge.[4]  Compl. ¶ 23.  Far from establishing that butter and milk are "essential fudge ingredients," Plaintiff's own allegations establish that there is no single definition of fudge and that no reasonable consumer "would believe a fudge product must, of necessity, contain milkfat."  *Reinitz*, 2022 WL 1813891, at *4.

For this precise reason, many courts have dismissed lawsuits—including those filed by Plaintiff's counsel here—premised on the theory that consumers expect products to contain highly specific ingredients.  *See, e.g.*, *Sibrian v. Cento Fine Foods, Inc.*, No. 19-974, 2020 WL 3618953, at *4 (E.D.N.Y. July 2, 2020) (dismissing lawsuit alleging that it was misleading to label canned tomatoes as "Certified San Marzano" tomatoes because they were not certified by the Consortium of the San Marzano Tomato); *Hodges v. King's Hawaiian Bakery W., Inc.*, No. 21-4541, 2021 WL 5178826, at *6 (N.D. Cal. Nov. 8, 2021) (dismissing lawsuit alleging that the phrase "Original Hawaiian Sweet Rolls" implied the presence of "traditional ingredients" from Hawaii, including pineapple juice, honey, and sugar).  Plaintiff attempts to distinguish these cases by asserting that "fudge is not some 'term of art' requiring departure from the plain dictionary definition."  Opp'n at 5 (citations and internal quotation marks omitted).  But as explained earlier, the "plain dictionary definition[s]" Plaintiff cites describe fudge as a stand-alone food—not as an adjective used to describe the characteristic chocolate fudge flavor of the cookies' coating.  Absent any plausible allegation that consumers associate the term "fudge" with the presence of butter, milk, or any other specific ingredient, Plaintiff has not stated a plausible claim of deception.

---

[4] Plaintiff asserts, with no elaboration, that fudge made with vegetable ingredients "is inconsistent with what consumers expect."  Opp'n at 4.  But this unsupported assertion *assumes* that consumers expect any product whose labeling includes the word "fudge" to include butter and milk, even though his own complaint proves that this is not the case.

**B.      The meaning of "fudge" does not present a disputed question of fact.**

Relying primarily on *Duran v. Henkel of America, Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y.

2020), Plaintiff asserts that this Court cannot decide "[w]hether a representation is likely to mislead

a reasonable consumer" on a motion to dismiss.  Opp'n at 2.  But despite Plaintiff's suggestion to

the contrary, "[i]t is well settled that a court may determine as a matter of law that an allegedly

deceptive advertisement would not have misled a reasonable consumer."  *Fink*, 714 F.3d at 741.

And consistent with that principle, many courts in New York have dismissed consumer fraud cases

where the plaintiff's allegations failed to establish reasonable consumer deception.[5]

Neither *Duran* nor any other case holds—or even suggests—that a plaintiff's subjective

and unfounded interpretation of a product's label is sufficient to state a consumer fraud claim.  To

the contrary, courts around the country have agreed that a manufacturer has no obligation to

"anticipate and affirmatively dispel . . . shoppers' idiosyncratic assumptions or wholly incorrect

interpretations of its advertising."  *Thomas v. Costco Wholesale Corp.*, No. 21-55355, 2022 WL

636637, at \*2 (9th Cir. Mar. 4, 2022); *see also, e.g.*, *Sarr v. BEF Foods, Inc.*, No. 18-6409, 2020

WL 729883, at \*3 (E.D.N.Y. Feb. 13, 2020) (dismissing lawsuit filed by Plaintiff's counsel

challenging claim that mashed potatoes were "made with real butter" and noting that a plaintiff

---

[5] *See, e.g.*, *Chen v. Dunkin Brands, Inc.*, 954 F.3d 492, 500–01 (2d Cir. 2020) (affirming dismissal
of lawsuit alleging that the term "steak," as used to describe breakfast sandwiches and breakfast
wraps, was misleading because the products contained ground beef patties); *Geffner v. Coca-Cola
Co.*, 928 F.3d 198, 200–201 (2d Cir. 2019) (affirming dismissal of lawsuit alleging that the name
"Diet Coke" misled consumers into believing that the soda promoted weight loss); *Beers v. Mars
Wrigley Confectionery US, LLC*, No. 21-2, 2022 WL 493555, at \*3 (S.D.N.Y. Feb. 17, 2022)
(dismissing lawsuit filed by Plaintiff's counsel alleging that "Milk Chocolate" representations
on chocolate ice cream bars were misleading because the coating contained vegetable fats and holding
that "no reasonable consumer would understand the representations on the front label" in this way);
*Harris*, 2020 WL 4336390, at \*3 (dismissing lawsuit filed by Plaintiff's counsel challenging
representation that OREO cookies were "made with real cocoa" because the cocoa had been
alkalized and holding that this phrase was "not misleading" as a matter of law).  This is not an
exhaustive list—or even close to one.

"must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers") (citation and internal quotation marks omitted); *Newton v. Kraft Heinz Foods Co.*, No. 16-4578, 2018 WL 11235517, at *8 (E.D.N.Y. Dec. 18, 2018) (granting motion to dismiss and emphasizing that "Plaintiff's assumption about what word associations consumers *might* make does not change the Court's conclusion that there is nothing deceptive about Defendants' 'natural' labeling") (emphasis in original).  Here too, even if Plaintiff subjectively interpreted the word "fudge" to imply the presence of butter and milk, that does not make MDLZ's labeling misleading.

Indeed, courts have been particularly willing to dismiss implausible consumer fraud claims premised on the theory that representations about a product's *flavor* suggested the presence of certain *ingredients*.  For example, many courts in this District (and elsewhere) have dismissed lawsuits alleging that the term "vanilla" is misleading because the product "has less vanilla than the label represents."  *Cosgrove v. Blue Diamond Growers*, No. 19-8993, 2020 WL 7211218, at *1 (S.D.N.Y. Dec. 7, 2020); *see also Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *3 (S.D.N.Y. Mar. 4, 2022) ("*Numerous* other courts, including this Court, have already dismissed near-identical challenges to the use of the word 'vanilla' on food labels because there is nothing in the word 'vanilla' itself that would lead a reasonable consumer to understand a product's flavor to be derived mostly or exclusively from the vanilla bean.").  In so holding, these courts have agreed that the term "vanilla" is "not misleading because a reasonable consumer would associate the representation of 'Vanilla'—with no additional language modifiers—to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient."  *Cosgrove*, 2020 WL 7211218,

at *3. And courts around the country have dismissed many other cases alleging that representations about a product's *flavor* implied the presence or absence of specific *ingredients*.[6]

In distinguishing between claims about a product's flavor and claims about a product's ingredients, these courts have agreed that, "without additional language modifiers that could imply a particular ingredient or source of flavoring," a reasonable consumer would not interpret claims like "vanilla" or "strawberry" to refer to a product's ingredients as opposed to its flavor. *Dashnau*, 529 F. Supp. 3d at 244; *see also Brown*, 2022 WL 992627, at *4 ("Courts typically find misleading representations about ingredients when the product label explicitly asserts that it is made with a specific ingredient or specifies the quantity of an ingredient . . . ."). Here too, the labeling of Fudge Covered Mint Creme OREO cookies does not claim to be "made with" butter or milk or to "contain" butter or milk; in fact, it does not even reference these ingredients. Absent any such representation, no reasonable consumer would assume "fudge" refers to the cookies' ingredients— let alone that it implies the presence of butter and milk. That is fatal to Plaintiff's lawsuit.

## II.   **Plaintiff's Common-Law Claims Also Fail.**

Even if Plaintiff had plausibly alleged that MDLZ's labeling is likely to mislead reasonable consumers (which he has not), his common-law claims all fail for independent reasons.[7]

---

[6] *See, e.g.*, *Brown v. Kellogg Sales Co.*, No. 20-7283, 2022 WL 992627, at *4 (S.D.N.Y. Mar. 31, 2022) (dismissing lawsuit challenging "strawberry" representations on Strawberry Pop-Tarts and holding that "the labeling describes [the] flavor instead of the *source* of the flavor") (emphasis in original); *Stiles v. Trader Joe's Co.*, No. 16-4318, 2017 WL 3084267, at *1 (C.D. Cal. Apr. 4, 2017) (dismissing lawsuit alleging that "Maple and Brown Sugar" representations on breakfast products implied the presence of maple syrup or maple sugar). Plaintiff attempts to distinguish *Stiles* by arguing that, unlike the term "maple," the term "fudge" is an "indicium of the source of the Product's ingredients." Opp'n at 6. But that argument *assumes* that reasonable consumers would interpret "fudge" as a representation about the cookies' ingredients—which they would not.

[7] In his opposition brief, Plaintiff withdraws his claim for violations of the Magnuson-Moss Warranty Act and his claim for negligent misrepresentation. *See* Opp'n at 1 n.1.

Express Warranty.  New York law requires a plaintiff to provide pre-suit notice before bringing a claim for breach of express warranty.  *See* MTD at 11–12.  Plaintiff asserts that he notified MDLZ of its purported breach "through filing this action."  Opp'n at 8.  But that does not establish that he provided "notice *before* filing this lawsuit"—as New York law requires.  *Brown v. Kerry Inc.*, No. 20-9370, 2021 WL 5446007, at *8 (S.D.N.Y. Nov. 22, 2021) (emphasis added).

Plaintiff then asserts that "notice requirements for breaches of warranty have long been jettisoned in New York state for retail sales."  Opp'n at 8 (citation and internal quotation marks omitted).  But the "minority of New York State cases" that have recognized this exception have applied it "exclusively . . . where a party alleges physical, in addition to economic, injury."  *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018) (citation omitted).  Absent any allegation that Plaintiff suffered physical harm, this supposed exception cannot apply.

Implied Warranty.  Plaintiff concedes that he did not purchase Fudge Covered Mint Creme OREO cookies from MDLZ and is not in privity with MDLZ.  That is fatal to his claim, as New York law "require[s] privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability . . . where the only loss alleged is economic."  *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *see* MTD at 12–13.

Relying on *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5 (1962), Plaintiff claims that "the New York Court of Appeals has 'dispens[ed] with the requirement of privity' in a world of mass marketing."  Opp'n at 9 (alteration in original).  But Plaintiff "neglect[s] to mention that *Randy Knitwear* preceded the enactment of the UCC," which restored the privity requirement for breach of implied warranty claims.  *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 6504547, at *6 (Dec. 11, 2013).  And for that reason, New York law continues to require privity in breach of implied warranty claims "where only economic loss and not personal injury is

alleged." *Aracena v. BMW of N. Am., LLC*, 71 N.Y.S.3d 614, 616 (App. Div. 2018).

  <u>Fraud</u>.  Although Plaintiff asserts that he has pleaded his common-law fraud claim with sufficient particularity under Rule 9(b), he largely ignores MDLZ's argument that the complaint fails to plead the scienter necessary to state a claim for fraud.  *See* MTD at 14–15.  And even if Plaintiff is correct that Rule 9(b)'s heightened pleading standard does not apply to allegations of scienter (*see* Opp'n at 9), that does not relieve him of the burden of pleading "factual allegation[s] sufficient to plausibly suggest [MDLZ's] . . . state of mind."  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  Neither Plaintiff's allegations that MDLZ knew its representations were false nor his conjecture that it had a profit motive to mislead consumers plausibly establish fraudulent intent.

  <u>Unjust Enrichment</u>.  Plaintiff concedes that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see* MTD at 16.  Plaintiff nonetheless argues that Rule 8 permits him to plead this claim in the alternative.  *See* Opp'n at 10.  But "even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (citation omitted). The Court should accordingly dismiss Plaintiff's claim for unjust enrichment.

<u>**CONCLUSION**</u>

  MDLZ respectfully requests that the Court dismiss Plaintiff's lawsuit with prejudice.

Dated:  July 12, 2022

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Dean N. Panos
Dean N. Panos (*pro hac vice*)
Alexander M. Smith (*pro hac vice*).

Attorneys for Defendant
Mondelēz Global LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on July 12, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  July 12, 2022                    By:  _____/s/ Dean N. Panos_____
                                                             Dean N. Panos