UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHRISTOPHER LEONARD, individually and on : 
behalf of all others similarly situated, :
 :
                    *Plaintiff*, :   21-cv-10102-PAC
 :
    - *against* - :
 :   **OPINION & ORDER**
 :
MONDELĒZ GLOBAL LLC, :
 :
                    *Defendant*. :
----------------------------------------------------------------X

      Plaintiff Christopher Leonard ("Plaintiff") brings this putative class action against Mondelēz Global LLC ("Defendant"). Defendant manufactures and sells Fudge Covered Mint Crème OREO cookies ("the Product"), which consist of chocolate sandwich cookies containing mint crème covered in a chocolate-flavored coating. Plaintiff claims, in large part, that the Product's label misleads consumers because it purports to contain "fudge" when, under Plaintiff's definition of fudge, it does not. Plaintiff proposes a New York class and a multi-state class based on all persons in North Dakota, Kansas, and Wyoming "who purchased the Product during the statute of limitations for each cause of action alleged" (the "Consumer Fraud Multi-State Class"). Plaintiff seeks money damages for (1) violations of New York General Business Law ("NY GBL") §§ 349 and 350; (2) violations of the "Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class"; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) fraud; (6) and unjust enrichment.[1] Defendant moves to dismiss the Complaint

---

[1] The Complaint also alleges violations of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and negligent misrepresentation and seeks injunctive relief. Plaintiff has subsequently withdrawn both claims and his request for injunctive relief. *See* Pl.'s Letter Mot. at 3 n. 1, ECF No. 12; Pl.'s Opp'n at 1 n. 1, ECF No. 15.

1

in its entirety under Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, Defendant's motion is **GRANTED** and the Complaint is dismissed in its entirety with prejudice.

## BACKGROUND

The following facts are taken from the Complaint and, for the purposes of this motion, are accepted as true and construed in the light most favorable to the Plaintiff.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 299 n.1 (2d Cir. 2021).

Defendant is a Delaware limited liability company with a principal place of business in East Hanover, New Jersey.  Compl ¶ 50, ECF No. 1.  Defendant's "forerunner" was "the National Biscuit Company ('Nabisco'), formed in 1898 from a merger of over 100 bakeries."  *Id.* ¶ 59.  "Nabisco introduced numerous staples of American pantries, including Oreos" and, together with its successor, Defendant, "emphasizes its commitment to quality products, labeled honestly."  *Id.* ¶¶ 61, 63.  Defendant currently manufactures, labels, markets, and sells chocolate sandwich cookies containing mint crème identified as "Fudge Covered" under the OREO brand.  *Id.* ¶ 1.  The Product is labeled as follows:



*Id.*

Fudge is a "type of sugar candy that is made by mixing sugar, butter and milk." *Id.* ¶ 2. While fudge can have any flavor, "milkfat is the central component." *Id.* ¶ 3. The quality of the fudge "depends on the amount and type of fat-contributing ingredients." *Id.* ¶ 17. The fat-contributing ingredients typically come from diary and are based on milkfat—mainly butter—or vegetable oils like palm and palm kernel oil. *Id.* ¶ 19–24. "Dairy ingredients impart a creamy, rich taste and texture" to fudge, *id.* ¶ 21, while vegetable oils "provide less satiety, a waxy and oily mouthfeel, and leave an aftertaste." *Id.* ¶ 26.

The Product's "fudge" is made of palm and palm kernel oil, nonfat milk, cocoa, and natural flavor, as determined by comparing the Product's ingredients against non-coated regular OREOS. *Id.* ¶ 32–33. Two ingredients lists for the Product are pictured below:

INGREDIENTS: SUGAR, PALM AND PALM KERNEL OIL, UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), CANOLA OIL, COCOA (PROCESSED WITH ALKALI), NONFAT MILK, COCOA, HIGH FRUCTOSE CORN SYRUP, LEAVENING (BAKING SODA AND/OR CALCIUM PHOSPHATE), SOY LECITHIN, SALT, PEPPERMINT OIL, CHOCOLATE, YELLOW 5 LAKE, BLUE 1 LAKE, ARTIFICIAL FLAVOR, NATURAL FLAVOR.

> **INGREDIENTS:** SUGAR, <mark>PALM AND PALM KERNEL OIL</mark>, UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), CANOLA OIL, COCOA (PROCESSED WITH ALKALI), <mark>NONFAT MILK</mark>, COCOA, HIGH FRUCTOSE CORN SYRUP, LEAVENING (BAKING SODA AND/OR CALCIUM PHOSPHATE), SOY LECITHIN, SALT, PEPPERMINT OIL, CHOCOLATE, YELLOW 5 LAKE, BLUE 1 LAKE, ARTIFICIAL FLAVOR, NATURAL FLAVOR.

*Id.* ¶ 31 (emphasis in original).

According to the Plaintiff, consumers expect that the label "Fudge Covered" and the picture of the cookie "coated with what appears to be fudge" means the Product contains fudge "made of dairy ingredients containing milk fat." *Id.* ¶ 34. The Product, however, lacks these dairy ingredients because it contains "nonfat milk and [] palm oils for its fat content." *Id.* ¶ 35. The Product's packaging is therefore misleading because it creates "an erroneous impression that essential fudge ingredients are present."

"By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers who sought to purchase a product that contained fudge ingredients such as dairy ingredients with milkfat." *Id.* ¶ 42. Plaintiff purchased the Product for "no less than approximately $3.99 for 9.9 oz. (280 g.), a higher price than it would otherwise be sold for, absent the misleading representations and omissions." *Id.* ¶ 46. Had Plaintiff and the proposed class members "known the truth, they would not have bought the Product or would have paid less for it." *Id.* ¶ 45.

**DISCUSSION**

**I.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's factual allegations must "raise a right to relief above the speculative level" to cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  Although the Court must accept the plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In deciding a motion to dismiss, the court may consider both "the allegations on the face of the complaint" and "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

**II.    Count I: NY GBL Sections 349 and 350**

Article 22-A of NY GBL protects consumers from deceptive acts and practices.  While Section 349 involves unlawful deceptive acts and practices and Section 350, unlawful false advertising, the standard for recovery under both is "identical." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395 (N.Y. App. Div. 1st Dep't 2010) (quoting *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190 (N.Y. 2002)).  To plead a cause of action under Sections 349 and 350, a plaintiff must show that "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* at 395–96 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA*, 85 N.Y.2d 20, 25 (1995)).

Defendant does not appear to contest for the purposes of this motion that the transaction was consumer oriented or that Plaintiff was injured. The parties' main dispute centers on whether the Defendant's representations were deceptive or materially misleading. An alleged act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotations omitted). Courts consider whether a reasonable consumer would be misled by viewing "each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, 20-CV-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020). While a plaintiff is not required to meet Rule 9(b)'s heightened pleading requirements, *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575–76 (S.D.N.Y. 2021), a plaintiff "must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quoting *Sarr v. BEF Foods, Inc.,* No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted)). Rather, a plaintiff must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (quotation marks omitted). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiff claims the Product's "Fudge Covered" description is false, deceptive, and misleading because the Product does not contain dairy ingredients that a reasonable consumer would expect to find in fudge. Compl. ¶¶ 34–35. Defendant asserts that the term "fudge" refers

6

to the Product's chocolate flavor, not its ingredients,[2] and in any event, no reasonable consumer would associate "fudge" with the presence of milk or butter. Def.'s Mem. of Law at 4, 8, ECF No. 14. The Court agrees that "Fudge Covered," without more, would not mislead a reasonable consumer into believing the product necessarily contained milkfat or butter, regardless of whether "Fudge Covered" refers to the Product's flavor or an ingredient.[3]

Plaintiff does not represent that the Product's label or ingredients list is misleading because it advertises it contains butter, milkfat or "fudge" made with any specific ingredients, nor could he; the Product represents no such thing. *See Pichardo*, 2020 WL 6323775 at *4. Plaintiff instead argues that because milkfat is the "central component" in fudge, Compl. ¶ 3, a reasonable consumer would believe that a product touting something "fudge covered" means it contains milkfat.

In support, Plaintiff cites several recipes and various cookbook, textbook, and dictionary definitions that list sugar, milk or cream, and butter as fudge ingredients. *Id.* ¶¶ 4–16. Courts in this District and across the country, however, have repeatedly rejected that dictionary definitions or recipes, without more, are representative of the views of a significant portion of reasonable

---

[2] In line with a group of cases known as "the Vanilla cases," courts in this Circuit distinguish "flavors" from "ingredients" in food and beverage products. *See, e.g.*, *Hawkins v. Coca-Cola Comp.*, No. 21-CV-8788 (KMK), 2023 WL 1821944, at *5-6 (S.D.N.Y. Feb. 7, 2023).

[3] This lawsuit is one of countless other copycat cases—all filed by the same attorney—challenging the use of the term "fudge" to describe chocolate-flavored foods. *See, e.g.*, *Pizarro v. Ferrara Candy Co.*, No. 21-151 (S.D.N.Y.) (Keebler Fudge Stripes); *Lederman v. Hershey Co.*, No. 21-4528 (N.D. Ill.) (Hershey Hot Fudge Topping); *Bartosiake v. Bimbo Bakeries USA, Inc.*, No. 21-4495 (N.D. Ill.) (Entenmann's Chocolate Fudge Iced Cake); *Reinitz v. Kellogg Sales Co.*, No. 21-1239 (C.D. Ill.) (Frosted Chocolate Fudge Pop-Tarts); *Huston v. Conagra Brands, Inc.*, No. 21-4147 (C.D. Ill.) (Duncan Hines Chewy Fudge Brownie Mix); *DeMaso v. Walmart Inc.*, No. 21-6334 (N.D. Ill.) (Great Value Fudge Mint Cookies). These lawsuits represent only a fraction of the many cases Plaintiff's counsel has filed against other food manufacturers alleging that packaging on a popular food item is false and misleading. *See Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-8923, 2021 WL 5144552, at *1 (S.D.N.Y. Nov. 4, 2021).

consumers. *See, e.g.*, *Spurck v. Demet's Candy Comp. LLC*, 21 CV 05506 (NSR), 2022 WL 2971957 (S.D.N.Y. July 27, 2022) (rejecting plaintiff's allegations that dictionary definitions and recipes plausibly show that a reasonable consumer would think "white fudge covered" implies the presence of milkfats); *Reinitz v. Kellog Sales Co.*, No. 21-cv-1239-JES-JEH, 2022 WL 1813891, at *4 (C.D. Ill. June 2, 2022) (rejecting claim based on recipes and dictionary definitions that "a chocolate-tasting fudge product made from oils and whey would mislead a reasonable consumer"); *Lederman v. Hershey Co.*, No. 21-4528, 2022 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022) ("[E]ven if the reasonable confectionery expert deems milkfat essential to fudge, Plaintiff has not shown that the reasonable 21st century consumer has the same expectations.").

To overcome this precedent, Plaintiff relies on a handful of nonbinding cases for the proposition that his definitions align with how courts "discern a word's plain meaning," *Harrop & Co., Ltd. v. Apollo Inv. Fund VII, LP*, 2015 N.Y. Slip Op. 31128 (N.Y. Sup. Ct. 2015), and are "evidence of the public's understanding of a term," *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 676 F. Supp. 1436, 1467 (E.D. Wis. 1987).  These cases are inapplicable to Plaintiff's allegations as neither address consumer fraud. *See Harrop & Co.*, 2015 N.Y. Slip Op. 31128 (analyzing ambiguous contract terms); *G. Heileman Brewing Co.*, 676 F. Supp. at 1467 (discussing trademark infringement).

Even assuming that Plaintiff's sources can be representative of a reasonable consumer, the definitions are inapposite because they refer to fudge as a standalone food, not a cookie coating. While Plaintiff claims that the definitions are "agnostic" as to form, the Court disagrees; most describe fudge as a "sweet" or "candy," implying a solid form. Compl. ¶¶ 2, 8, 9, 12, 13, 14, 15, 16; *see also Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 161 n.17 (S.D.N.Y. 2022)

(rejecting plaintiff's reliance on dictionary definitions of solid chocolate candy when alleged misrepresentation was based on chocolate coating).[4]

Finally, not a single source claims that milk and butter are essential fudge ingredients or that milkfat is necessary to make fudge. Indeed, Molly Mills—who Plaintiff identifies as "one of today's leading authorities on fudge"—describes fudge as "*most commonly* made from butter, sugar, and chocolate." *Id.* ¶ 7 (emphasis added); *Howze v. Mondelēz Global LLC*, 22-CV-351 (JLS), 2023 WL 122307, at * 3 (S.D.N.Y. Jan. 5, 2023) ("Even if Plaintiff were correct that shortbread is *commonly* made with butter, her claim would fail because she has not plausibly alleged that the average consumer believes that shortbread cookies *necessarily* contain butter."). The Complaint itself asserts that "[a]lternatives to milk fat, such as vegetable oils, are often used in place of dairy ingredients to reduce cost," undercutting Plaintiff's reliance on his own proposed definitions. Compl. ¶ 23. He vaguely suggests that this is "inconsistent with what consumers expect," Pl.'s Opp'n at 4, ECF No. 15, but provides nothing to support why a reasonable consumer would not expect ingredients that, in Plaintiff's own words, are "often used" in fudge. *See also Beers v. Mars Wrigley Confectionery US LLC*, No. 21-CV-2 (CS), 2022 WL 493555, at *4 (S.D.N.Y. Feb. 17, 2022) (noting that a reasonable consumer would know that chocolate must be mixed with some significant amount of fat or oil to create a coating around an ice cream bar). Plaintiff therefore fails to plausibly allege that a reasonable consumer would conclude "Fudge Covered," without more, necessarily implies that the Product contains milkfat. His claims under Section 349 and 350 are therefore dismissed.

---

[4] Plaintiff's allegations regarding any allegedly deficient "mouthfeel" or "aftertaste" fail for the same reason in that they are based on inapposite dictionary definitions. *See Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 162 (S.D.N.Y. 2022). In fact, the Complaint does not address Plaintiff's own experience with the taste or texture of the Product at all.

**III.** <u>Count II:  State Consumer Fraud Claims</u>

      Defendant also moves to dismiss Plaintiff's "Delaware, Kansas, and Wyoming" consumer fraud claims.  Def. Mem. of Law at 4, n.3, ECF No. 14.  Plaintiff's only argument is that Defendant's claims may not be properly raised in a footnote.  *See* Pl.'s Opp'n, at 7.  To start, Plaintiff brought claims under *North Dakota*, Kansas, and Wyoming law.  Compl. ¶ 74.  However, the parties appear to agree again that the material issue here, as with the NY GBL claims, is whether a reasonable consumer would be misled.  *See also Harris v. Mondelēz Global LLC*, 19-cv-2249 (ERK) (RER), 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) (using "reasonable consumer" standard to analyze claims brought under Kansas, Delaware, and North Dakota consumer protection statutes); *Nicklas v. Prof. Ass., LLC.*, No. 18-CV-006-SWS, 2018 WL 8619646, at *3 (D. Wyo. Sept. 26, 2018) (noting "deceptive practice" under Wyoming Consumer Protection Act "has broadly been understood as one that is likely to mislead consumers").

      While a party runs the risk of waiving an issue by not sufficiently arguing it in its motion, courts have "ample discretion to excuse such a failure" particularly when there is "no question of surprise as to the nature of the contention, and refusing to consider the issue would result in substantial injustice."  *Salahuddin v. Goord*, 467 F.3d 263, 276 n.6 (2d Cir. 2006) (internal quotations omitted).  Plaintiff cannot claim surprise over the nature of Defendant's arguments when he called the error to the Court's attention in the first instance in his opposition brief and when the underlying state statutes in Count Two rely on materially the same standard as Defendant's fully-briefed NY GBL claims.  Plaintiff's claims under Wyoming, North Dakota, and Kansas law likewise fail for the same reason they failed under New York law; he has not plausibly alleged that a reasonable consumer would mistakenly believe that the phrase "Fudge Covered" necessarily means the Product contains milk or butter.

## IV. Count III:  Breach of Express Warranty[5]

"To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (2d Cir. 2014).  A buyer must provide the seller with timely notice of the alleged breach prior to bringing suit.  *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020).  Although some courts suggest an exception to the notice requirement in retail sales, the majority of courts find the exception inapplicable where a plaintiff does not allege a physical or personal injury as a result of the defendant's breach.  *See Colella v. Atkins Nutritionals, Inc*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018).  Plaintiff fails to allege physical harm; this exception is thus inapplicable.

Plaintiff also fails to allege he provided adequate notice.  He maintains that filing the Complaint gave the Defendant sufficient notice of its alleged breach.[6]  "Whether the required notice for a breach of warranty claim must be made pre-lawsuit or can be accomplished by commencing litigation is an open question, and courts in this District have split in answering it." *Wheeler v. Topps Co., Inc.*, 22 Civ. 2264 (LGS), 2023 WL 405015, at *4 (S.D.N.Y. Jan. 25, 2023).

---

[5] Both parties presume in their briefing that New York law governs Plaintiff's remaining state-law claims.  "[S]uch 'implied consent' suffices 'to establish choice of law.'"  *GateGuard, Inc. v. Amazon.com Inc.*, 21-cv-9321 (JGK), 2023 WL 2051739, at *8 (S.D.N.Y. Feb. 16, 2023) (quoting *Krumme v. Westpoint Stevens*, 238 F.3d 133, 138 (2d Cir. 2000)).

[6] Although he does not argue it in his brief, the Complaint's assertion that "Plaintiff provided or will provide notice" and that "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers" likewise fails because it is too conclusory and non-specific to adequately plead the required notice.  *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 155 (S.D.N.Y. 2022).

Courts that have held that commencing litigation is adequate notice have done so in reliance on *Panda Capital Corp. v. Kopo Intern*, 662 N.Y.S. 2d 584, 586 (N.Y. App. Div. 2d Dep't 1997), where the court emphasized the specific context of the dispute where the plaintiff "repeatedly made its objections . . . known" in addition to filing suit. *Id.* (quoting *Panda Capital*, 662 N.Y.S. 2d at 586). "Noting this fact, the clear majority of courts in this District have rejected arguments that *Panda Capital* permits a plaintiff to satisfy the notice requirements by filing a complaint." *Id.* The Court agrees and rejects Plaintiff's contention that merely filing suit constitutes proper notice. Plaintiff's claim alternatively fails for the same reasons his NY GBL claims fail; he has not plausibly alleged that a reasonable consumer would be misled to believe that "Fudge Covered" necessarily means the Product contains milkfat. *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 184–85 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) (summary order).

## V. Count IV: Breach of Implied Warranty

Plaintiff's breach of implied warranty claim fails for the same lack of pre-suit notice. *See, e.g.*, *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. Feb. 2, 2021) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach). Even assuming proper notice, Plaintiff's claim fails because nothing in the Complaint even remotely suggests that the Product is unfit for consumption. *See Marotto v. Kellog Co.*, No. 18-cv-3545 (AKH), 2018 WL 10667923, at *8 (S.D.N.Y. Nov. 29, 2018).

## VI. Count V: Fraud

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably

relied; and (5) which caused injury to the plaintiff." *DeRaffele v. Williams & Williams*, 21-CV-06033 (PMH), WL 2058611, at *3 (S.D.N.Y. Feb. 16, 2023). A plaintiff must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard and must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rostami v. Open Props, Inc.*, No. 22-CV-3326 (RA), 2023 WL 137748, at *3 (S.D.N.Y. Jan. 9, 2023) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). A plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.*

Plaintiff alleges that Defendant acted with fraudulent intent because it knew, through "the records Defendant is required to maintain and/or information inconspicuously disclosed to consumers" that the Product was not consistent with its representations and because Defendant's alleged misrepresentation allowed it to sell more of the Product and "at higher prices." Compl. ¶¶ 44, 107. Both arguments fail. "The simple knowledge that a statement is false is not sufficient to establish fraudulent intent," nor is a "generalized motive to satisfy consumers' desires [or] increase sales or profits." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018); *Hawkins v. Coca-Cola Comp.*, No. 21-CV-8788 (KMK), 2023 WL 1821944, at *5-6 (S.D.N.Y. Feb. 7, 2023). Because the Complaint does not plausibly allege fraudulent intent, Plaintiff's fraud count is dismissed.

## VII. Count VI: Unjust Enrichment

"An unjust enrichment claim is not available" if it "simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E. 2d 1177, 1185 (N.Y. 2012). Plaintiff's unjust enrichment claim "hinges on the same facts that provide the basis" for

every other of his claims and is therefore dismissed. *Pauwels v. Deloitte LLP*, No. 19-cv-2313, 2020 WL 818742, at *15 (S.D.N.Y. Feb. 19, 2020).[7]

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss the Complaint with prejudice. The Clerk of Court is respectfully directed to close the motion at ECF No. 13.

Dated: New York, New York
March 8, 2023

SO ORDERED

*Paul A. Crotty*

HONORABLE PAUL A. CROTTY
United States District Judge

---

[7] To the extent Plaintiff claims he pleads unjust enrichment in the alternative, this argument likewise fails. *See Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 399 n.15 (S.D.N.Y. Feb. 2, 2021).